## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **SHAFQAT ABBAS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case: 1:25-cv-05310** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **THE UNIVERSITY OF CHICAGO,** | ) | |
| | ) | |
| **Defendant.** | ) | **Jury Trial Demanded** |
| | ) | |

## COMPLAINT

Plaintiff, Shafqat Abbas ("Plaintiff"), by and through the undersigned counsel, hereby files this Complaint against The University of Chicago ("Defendant"), and in support states as follows:

## NATURE OF PLAINTIFF'S CLAIMS

1. This lawsuit arises under the Americans with Disabilities Act of 1990, as amended, ("ADA"), seeking redress for Defendant's discrimination on the basis of Plaintiff's disability, Defendant's failure to accommodate Plaintiff's disability, and Defendant's retaliation against Plaintiff for engaging in protected activity under the ADA.

2. This lawsuit also arises under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq*. ("FMLA") seeking redress for Defendant's retaliation for Plaintiff requesting/utilizing their FMLA rights.

## JURISDICTION AND VENUE

3.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331.  This action is authorized and instituted pursuant to 42 U.S.C. § 12101 et seq.

4.      Venue of this action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. §1391(b) insofar as Defendant operates and transacts business in this judicial district and the events giving rise to Plaintiff's claims occurred within this District.

## ADMINISTRATIVE PREREQUISITES

5.      All conditions precedent to jurisdiction under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*, and the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq*. have occurred or been complied with.

6.      A charge of employment discrimination on basis of disability and retaliatory discharge was filed by the Plaintiff with the Equal Employment Opportunity Commission ("EEOC") (Attached hereto as Exhibit "A").

7.      Plaintiff received a Notice of Right to Sue from the EEOC (attached hereto as Exhibit "B"), and Plaintiff filed this lawsuit within ninety (90) days of Plaintiff's receipt of the EEOC's Notice of Right to Sue.

## PARTIES

8.      At all times material to the allegations of this Complaint, Plaintiff, John Santos, resides in St. Joeseph County, Indiana.

9.      At all times material to the allegations in this Complaint, Defendant, The University of Chicago, is a corporation doing business in and for Cook County whose address is 5801 South

2

Ellis Avenue, Chicago, Illinois 60637-5418.

10.     Plaintiff was employed by Defendant as an "employee" within the meaning of ADA, 42 U.S.C. § 12111(4).

11.     Plaintiff was an "eligible employee" as defined by the FMLA, 29 U.S.C. §2611(2)(A).

12.     During the applicable limitations period, Defendant has had at least fifteen employees, has been an "employer" as defined by ADA, and has been engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 12111(5)(A).

13.     During the applicable limitations period, Defendant was an "employer" as defined by the FMLA 29 U.S.C.§ 2611(4).

## BACKGROUND FACTS

14.     Plaintiff was employed by Defendant as a Network Specialist in or around May 2023, until he was unlawfully terminated on or around April 21, 2025, on the basis of his disability.

15.     Plaintiff has mental and physical impairments that substantially limit major life activities.

16.     Specifically, Plaintiff suffers from cervical stenosis, depression, anxiety, diabetes, and asthma.

17.     These disabilities can cause symptoms including, but not limited to, pain, fatigue, difficulty concentrating, shortness of breath, mobility limitations, and emotional distress.

18.     These disabilities substantially limit major life activities, such as walking, standing, lifting, and performing manual tasks due to pain, weakness, and fatigue; concentrating, thinking, and interacting with others due to emotional and cognitive impairments; and breathing

and engaging in physical activities due to respiratory limitations.

19.     Regardless of Plaintiff's disability, he was qualified to perform the essential functions of his job, with or without reasonable accommodation.

20.     In or around July 2024, Defendant implemented a policy requiring employees to work in the office three days per week, substantially increasing Plaintiff's commute (two hours each way) and negatively impacting his health conditions.

21.     In or around October 2024, Plaintiff requested flexible work hours as his health issues worsened.

22.     Plaintiff specifically requested to work remotely most of the time due to the physical and mental toll of driving 200 miles three days a week.

23.     Plaintiff's job can be done remotely 80% of the time.

24.     Plaintiff also offered to drive into the office for urgent issues.

25.     Plaintiff's manager, Brian (LNU, non-disabled), denied this request and stated that no flexibility could be provided despite that Plaintiff's requested reasonable accommodation would not present an undue burden on Defendant.

26.     Despite knowing about Plaintiff's disabilities, Brian further exacerbated the situation by asking Plaintiff to report to the office on weekends without offering any compensatory time.

27.     Brian also closely scrutinized Plaintiff's requests for time off and regularly referred Plaintiff to Human Resources instead of providing assistance.

28.     Beginning in or around October 2024, Brian began to micromanage Plaintiff, removed Plaintiff from work projects, and issued poor performance reviews based on false

allegations.

29.     Plaintiff was denied the opportunity to respond to these allegations before they were finalized.

30.     Brian also issued unwarranted attendance warnings to Plaintiff.

31.     Plaintiff responded to these warnings with evidence demonstrating that the warnings lacked merit, but Defendant took no corrective action.

32.     In or around November 2024, Plaintiff took approved leave from November 8 through December 8, 2024, to travel abroad.

33.     Due to complications from Plaintiff's asthma, Plaintiff required an additional 10 days of leave after December 8, 2024, which Brian initially refused to approve.

34.     In or around January 2025, Plaintiff reported Brian's targeting and discriminatory behavior to Defendant's HR Manager, Christina Fox (non-disabled).

35.     Although Christina promised to investigate the matter, she later informed Plaintiff that no wrongdoing was found on Brian's part.

36.     Additionally in January 2025, Plaintiff's cervical stenosis symptoms worsened significantly, causing numbness in Plaintiff's fingers, balance issues, cognitive difficulties, and a constant feverish state.

37.     Plaintiff's doctor prescribed pain medication, but the symptoms were especially severe when Plaintiff was required to drive into the office.

38.     Plaintiff informed both Brian and HR about Plaintiff's worsening medical conditions.

39.     HR advised Plaintiff to apply for intermittent FMLA leave, and Plaintiff promptly

5

submitted the necessary paperwork.

40.     Following Plaintiff's disclosure of the medical conditions and FMLA request, Brian began to harass Plaintiff by inquiring about his whereabouts whenever he went to the restroom.

41.     This harassment continued until Plaintiff's termination.

42.     In or around January 2025, Plaintiff's additional 10 days of leave taken in December 2024 were finally approved, and Defendant modified its in-office work policy from three days per week to two days per week.

43.     On or about January 13, 2025, Defendant rejected Plaintiff's FMLA request, claiming that documentation from a specialist and a psychiatrist was required in addition to the notes already provided by Plaintiff's primary care physician.

44.     On or about January 17, 2025, Plaintiff informed Defendant that Plaintiff was placed on a waiting list to see the psychiatrist recommended by Plaintiff's doctor.

45.     On or about March 26, 2025, Plaintiff resubmitted his FMLA request, including documentation from the requested specialist.

46.     In or around April 2025, despite having already received specialist documentation, HR demanded further certification from Plaintiff's primary care physician to explain the necessity of FMLA leave.

47.     Plaintiff's FMLA request remained pending.

48.     On or about April 10, 2025, Plaintiff's orthopedic spinal surgeon informed Plaintiff that surgery would be necessary within the next two months.

49.     Plaintiff immediately notified HR that Plaintiff would require several weeks off

for recovery and inquired about the procedures for short-term disability and FMLA.

50.     HR failed to respond to these inquiries.

51.     Also in April 2025, Plaintiff's chiropractor determined that it was unsafe for Plaintiff to continue driving to Chicago due to Plaintiff's medical conditions.

52.     On or about April 21, 2025, during a Teams meeting with Brian and Christina, Plaintiff was informed that Plaintiff's employment was being terminated for allegedly taking excessive time off.

53.     However, at that time, Plaintiff had not exceeded accrued leave and had only taken three days off in 2025 due to illness.

54.     Plaintiff subsequently received a termination letter via email.

55.     Defendant's stated reason for termination is pretextual.

56.     Defendant failed to engage in the interactive process required by law, denied Plaintiff reasonable accommodations, and subjected him to termination because of his disability.

57.     Moreover, by terminating Plaintiff him while he was still entitled to seek accommodation or protected leave, Defendant unlawfully interfered with Plaintiff's rights under the FMLA.

58.     Defendant's actions constitute interference with Plaintiff's rights under the FMLA and discrimination, failure to accommodate, and retaliation in violation of the ADA.

59.     Ultimately, on or about April 11, 2025, Plaintiff was terminated on the basis of Plaintiff's disability and engaging in protected activity as described above.

60.     The purported justification for termination was unlawful discrimination based on disability or because Defendant perceived Plaintiff as disabled.

7

### COUNT I
### Violations of the Americans with Disabilities Act
### (Disability-Based Discrimination)

61.     Plaintiff repeats and re-alleges paragraphs 1-60 as if fully stated herein.

62.     By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's disability, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*.

63.     Plaintiff met or exceeded performance expectations.

64.     Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

65.     Defendant terminated Plaintiff's employment on the basis of Plaintiff's disability.

66.     Defendant's conduct toward Plaintiff illustrated a willful and/or reckless violation of the ADA.

67.     Plaintiff is a member of a protected class under the ADA, due to Plaintiff's disability.

68.     Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

69.     As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation and loss of enjoyment of life.

### COUNT II
### Violation of Americans with Disabilities Act
### (Disability-Based Harassment)

70.     Plaintiff repeats and re-alleges paragraphs 1-60 as if fully stated herein.

8

71.     By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices and harassed the Plaintiff on the basis of Plaintiff's disability, in violation of Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq*.

72.     Defendant knew or should have known of the harassment.

73.     The disability-based harassment was severe or pervasive.

74.     The disability-based harassment was offensive subjectively and objectively.

75.     Plaintiff is a member of a protected class under Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.*, due to Plaintiff's disability.

76.     Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

77.     As a direct and proximate result of the harassment described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

### COUNT III
### Violation of Americans with Disabilities Act
### (Failure to Accommodate)

78.     Plaintiff repeats and re-alleges paragraphs 1-60 as if fully stated herein.

79.     By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices by failing to accommodate Plaintiff's disability, in violation of Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq*.

80.     Plaintiff is a qualified individual with a disability.

81.     Defendant was aware of the disability and the need for accommodations.

82.     Defendant failed to engage in the interactive process to determine the appropriate accommodations after Plaintiff requested reasonable accommodations.

83.     Plaintiff's reasonable accommodations that were requested was not an undue burden on the Defendant.

84.     Defendant did not accommodate Plaintiff's disability.

85.     Plaintiff is a member of a protected class under Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq*., due to Plaintiff's disability.

86.     Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

87.     As a direct and proximate result of the failure to accommodate described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT IV
### Violation of Americans with Disabilities Act
### (Retaliation)

88.     Plaintiff repeats and re-alleges paragraphs 1-60 as if fully stated herein.

89.     Plaintiff is a member of a protected class under 42 U.S.C. § 12101, *et seq.*

90.     During Plaintiff's employment with Defendant, Plaintiff requested reasonable accommodations in an attempt to continue to work while managing his chronic conditions.

91.     As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*.

92.     In response to Plaintiff's complaint, Defendant failed to conduct a thorough and objective investigation of Plaintiff's complaint of disability-based discrimination.

93.     Defendant also failed to take necessary precautions to prevent further recurrences of the discriminatory or harassing conduct complained of by Plaintiff.

94.     By virtue of the foregoing, Defendant retaliated against Plaintiff based on Plaintiff requesting accommodations, thereby violating Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*

95.     Plaintiff suffered an adverse employment action in retaliation for engaging in protected activity.

96.     Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

97.     As a direct and proximate result of the retaliation described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

### COUNT V
**Violation of the Family and Medical Leave Act**
**(FMLA Interference)**

98.     Plaintiff repeats and re-alleges paragraphs 1-60 as if fully stated herein.

99.     In or around May 2024, Plaintiff was eligible for FMLA leave.

100.    At all times material, Plaintiff gave proper notice to his employer by informing them of his disability.

101.    Defendant controlled Plaintiff's work schedule and conditions of employment.

102.    Plaintiff provided enough information for his employer to know that his potential leave may be covered by the FMLA.

103.    Despite Plaintiff's FMLA eligibility, Defendant unlawfully denied Plaintiff's utilization of his FMLA rights.

104.    Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

105.    As a direct and proximate result of the interference described above, Plaintiff has

suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Honorable Court find in Plaintiff's favor and against Defendant as follows:

a.    Back pay with interest;

b.    Payment of interest on all back pay recoverable;

c.    Front pay;

d.    Loss of benefits;

e.    Compensatory and punitive damages;

f.    Reasonable attorneys' fees and costs;

g.    Award pre-judgment interest if applicable; and

h.    Award Plaintiff any and all other such relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests that all issues be submitted to and determined by a jury.

Dated this 13th day of May 2025.

*s Mally L. Slone*
**MALLY L. SLONE, ESQ**.
KY Bar No.: 101128
**SULAIMAN LAW GROUP LTD.**
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone (331) 272- 1940
Fax (630) 575 - 8188
mslone@sulaimanlaw.com
*Attorney for Plaintiff*